**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SCARLET F.,**[1] | ) | |
| | ) | **No. 24 CV 1739** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | **September 24, 2026** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Scarlet F. seeks supplemental security income ("SSI") asserting that she is disabled by physical and mental ailments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Scarlet's remand request is granted:

### Procedural History

Scarlet filed an SSI application in February 2021 claiming disability onset on March 8, 2019. (Administrative Record ("A.R.") 271-74.) Her application was denied initially and upon reconsideration at the administrative level. (Id. at 104-57.) She then sought and was granted a hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert ("VE") testified. (Id. at 67-103, 158, 177.) The ALJ found in March 2023 that Scarlet is not disabled. (Id. at 42-52.) The Appeals

---

1 Pursuant to Internal Operating Procedure 22, the court uses Scarlet's first name and last initial in this opinion to protect her privacy to the extent possible.

Council denied Scarlet's request for review, (id. at 1-7), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Scarlet then filed this action for judicial review, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 6).

**Analysis**

Scarlet argues that the ALJ erred when: (1) discounting the consulting examiner's and her treating therapist's opinions; (2) failing to adopt all limitations set forth in a state agency psychologist's opinion; and (3) articulating the reasons for her residual functional capacity ("RFC") assessment. (See generally R. 14, Pl.'s Br.) The court agrees that the ALJ erred.

**A. Opinion Evidence**

The court first turns to the ALJ's assessments of psychological consultative examiner Dr. Michael Stone's and treating therapist Jennifer Nudo's opinions, because any error there would require a reassessment of the RFC. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must assess the persuasiveness of all medical opinions by considering and explaining the most important factors, supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion

is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how she considered the source's specializations and relationship with the claimant and any other factors tending to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

After conducting a consultative psychological examination of Scarlet in November 2021, Dr. Stone opined that she has "fair" ability to relate to others and "poor" ability to understand, remember, and follow simple directions, perform simple, repetitive tasks, sustain concentration, persistence, and pace, and withstand the stress and pressures associated with day-to-day work activity. (A.R. 405-06.) Dr. Stone based his opinion on observed memory deficits, impairments in abstract thinking, calculations, and general knowledge, and Scarlet's reported "difficulty performing instrumental daily tasks, such as self-travel, filling out forms, shopping, and managing money." (Id. at 406.) He also determined that Scarlet would be unable to manage SSI benefits if awarded. (Id.) The ALJ "did not find [Dr. Stone's] opinion persuasive" because it was "excessive in light of [] evidence" showing that psychiatric medications "helped with [Scarlet's] symptoms," and she otherwise engaged in "very routine, conservative treatment," seeing a therapist once a month "via telehealth only." (Id. at 50.) The ALJ also pointed out that Scarlet was cooperative and oriented to time, place, and person, engaged in appropriate behavior, and displayed normal affect and "unremarkable" mood during Dr. Stone's consultative examination. (Id.)

Scarlet argues that in her finding the ALJ failed to sufficiently articulate how she assessed the supportability and consistency factors. (R. 14, Pl.'s Br. at 11.) The court agrees that the ALJ's analysis falls short. Indeed, the ALJ did not address the extent to which Dr. Stone's opinions are consistent with treating therapist Nudo's opinions that Scarlet is seriously limited in her ability to understand, remember, and carry out very short and simple instructions. (A.R. 516.) Nor did the ALJ discuss how Dr. Stone's concerns over Scarlet's travel difficulties and inability to shop are borne out in the medical record. For instance, Scarlet's therapy notes frequently discuss her agoraphobia and struggles to leave her house, along with anxiety and panic attacks. (See, e.g., id. at 421, 538, 549, 555-56, 562, 567, 651, 669-70 (March 2022 to January 2023 records noting Scarlet's agoraphobia, anxiety, and panic attacks associated with leaving the house beginning at age 23 and her goal of working toward grocery shopping alone).) Yet the ALJ discounted Dr. Stone's opinion because Scarlet received "only" telehealth therapy, without considering Scarlet's difficulty leaving the house for in-person therapy. (Id. at 50); *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (holding that ALJ must consider "possible reasons" a claimant may not have pursued additional treatment before discounting her allegations because she received only "conservative" treatment).

Furthermore, the ALJ did not acknowledge that Scarlet continues to suffer from panic attacks and anxiety when leaving her house even though some symptoms have improved with medication, (see, e.g., A.R. 561-62 (July 2022 therapy note), 651 (November 2022 note), 669-70 (December 2022 note)), or recognize that improvement

does not equate to an ability to work full-time, *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). The ALJ also failed to explain how Scarlet's behavior, orientation, and mood during her consultative examination detract from or contradict poor memory, impaired thinking, and struggles with solo travel and money management, as Dr. Stone found. (Id. at 403-06.) Simply put, the ALJ's analysis of Dr. Stone's opinion lacks the support of substantial evidence.

Scarlet next complains that the ALJ improperly assessed her therapist Nudo's November 2022 mental RFC questionnaire, in which she checked boxes indicating that Scarlet has "serious" limitations in her ability to: remember work-like procedures; understand, remember, and carry out very short and simple instructions; work in coordination with or proximity to others; complete a work week without psychologically based symptoms; and perform at a consistent pace. (Id. at 516.) Nudo also checked boxes indicating that Scarlet is "unable to meet competitive standards" for understanding, remembering, and carrying out detailed instructions, interacting appropriately with the public, traveling to unfamiliar places, and using public transportation, and she is "seriously limited" in dealing with the stress of skilled or semi-skilled work. (Id. at 517.) Perhaps most importantly, Nudo opines that Scarlet would be absent more than four days per week and experiences "weekly panic attacks" and an "inability to leave home on her own." (Id. at 516, 518.) As with Dr. Stone's opinion, the ALJ "did not find [Nudo's] opinion persuasive" because it was

"internally inconsistent with Nudo's own medical findings" reflecting largely normal mental status examinations ("MSEs"), relies on self-reports during telehealth visits "rather than observations in person," and conflicts with Scarlet's ability to complete her GED and register for college classes. (Id. at 50.)

Scarlet complains that the ALJ "gave no explanation" for determining that earning a GED, registering for college courses, and having normal MSEs "translate to an ability to perform full-time work." (R. 14, Pl.'s Br. at 11.) And she says that by discounting both Nudo's and Dr. Stone's opinions, the ALJ failed to account for her treatment records reflecting sad mood, low energy, memory impairment, worry, agoraphobia, irritability, and panic attacks. (Id. at 12.) She asserts that such evidence supports both Nudo's and Dr. Stone's opinions finding that she has difficulty "understanding and following simple instructions and tasks." (Id.)

While this court may not reweigh the evidence, it agrees with Scarlet that the ALJ ignored an entire line of evidence and failed to adequately explain her decision. When assessing Nudo's opinion, the ALJ overlooked Nudo's consistent finding that despite relatively normal MSEs, Scarlet struggles to leave her home and suffers panic attacks on a bimonthly to weekly basis. (See, e.g., A.R. 421, 538, 549, 555-56, 562, 567, 651, 669-70 (March 2022 to January 2023 therapy notes).) And in discounting Nudo's opinion for being rendered on something other than in-person observation the ALJ failed to consider that in-person therapy was not possible for Scarlet. (Id. at 50.) Moreover, the ALJ ignored the fact that Scarlet earned her GED and registered for college courses online. (Id. at 50, 75-76, 88.) In sum, the ALJ's assessment of

Dr. Stone's and Nudo's opinions lacks the support of substantial evidence, and remand therefore is required. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion" and "may not ignore entire lines of contrary evidence.").

**B. RFC Assessment**

Scarlet complains that the ALJ failed to explain why she declined to incorporate into her RFC all limitations state agency psychologist Dr. Shanna Ratzburg noted and the basis for her mental RFC assessment. (R. 14, Pl.'s Br. at 9, 12-14.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate a claimant's limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether she considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

Dr. Ratzburg found at the initial administrative level that Scarlet suffers "moderate" limitations in the paragraph B criteria of understanding, remembering, or applying information and concentrating, persisting, and maintaining pace ("CPP")

and "mild" limitations in interacting with others and adapting or managing oneself. (A.R. 113.) After completing a checkbox worksheet finding that Scarlet was either "not significantly limited" or "moderately limited" in her ability to perform various functions specified, Dr. Ratzburg provided a narrative concluding that Scarlet can "understand, remember, and follow simple directions," can maintain "attention required to perform simple, repetitive tasks," and "may benefit from consistent, routine job duties," but would "likely have difficulty understanding and remembering detailed instructions/tasks." (Id. at 120-22.)

While Scarlet's complaints are limited to the ALJ's failure to incorporate all of Dr. Ratzburg's limitations into the RFC, the court also mentions Dr. Howard Tin's assessed limitations on reconsideration because the ALJ did not differentiate between the psychologists' opinions or explain which she found more persuasive, even though they differ in some respects. (Id. at 50.) Specifically, while both Drs. Ratzburg and Tin found Scarlet experienced "moderate" limitations in CPP and "mild" limitations in adapting or managing herself, Dr. Tin deemed Scarlet only mildly limited in understanding, remembering, or applying information but assessed a moderate limitation in her ability to interact with others. (Compare id. at 113 with id. at 129.) Like Dr. Ratzburg, Dr. Tin also found that Scarlet was either "not significantly limited" or "moderately limited" as to her ability to perform functions set forth in the worksheet portion of the form, although the ratings they assigned do not always match. (Compare id. at 120-22 with id. at 134-35.) Finally, Dr. Tin added in the narrative portion of his assessment that Scarlet: has "difficulty in interacting

appropriately with the general public and tends to withdraw and self-isolate," so she would need to "[l]imit tasks that require interaction with the general public"; and would "likely have difficulty understanding and remembering detailed instructions/tasks" and "maintaining attention and concentration for extended periods of time." (Id. at 134-35.) That said, Dr. Tin found Scarlet is "capable of performing simple routine tasks" and could "understand, remember, and follow simple directions." (Id.)

Regarding the state agency psychologists' opinions, the ALJ said, "[t]he DDS opin[ed that] . . . the claimant could follow simple directions. She could perform repetitive tasks. She could concentrate for two hours and perform consistent job duties (1A; 3A). The DDS opinion is consistent with the medical evidence and accommodate[] her mental limitations." (Id. at 50.) The ALJ did not expressly assign any level of persuasiveness to these opinions. (See id.) The ALJ then concluded that Scarlet can perform medium work with postural and environmental limitations, except:

> [Scarlet] retains the capacity to understand[,] remember, concentrate, persist, and perform simple, routine, repetitive tasks with the ability to follow simple, but uninvolved, oral, written, or diagrammed instructions in a low stress environment, which is defined as having few, if any, simple work-related decisions and few, if any, routine changes in the work setting. No interaction with the public and only occasional interaction with co-workers. [Scarlet] can attend for two hours at a time and then would need a 10-minute break which can be accommodated by routine breaks and lunch. . . . [Scarlet] cannot perform team tasks. [Scarlet] would need three bathroom breaks per day, which can be accommodated by routine breaks and lunch.

(Id. at 46-47.) Scarlet complains that the assessed RFC does not account for, and fails "to acknowledge, much less resolve, any disagreement with" Dr. Ratzburg's opinions that she is "moderately limited" in her ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 14, Pl.'s Br. at 14 (citing A.R. 121).)

The government does not dispute that despite not assigning a level of persuasiveness to Dr. Ratzburg's opinions the ALJ "relied on" and "credit[ed]" them in formulating the RFC, but it argues that the ALJ accounted for all restrictions assessed therein as required. (R. 19, Govt.'s Resp. at 1-2, 7-10 (citing Social Security Administration's Program Operating Manual System ("POMS") DI 24510.060).) In so arguing, the government explains that the limitations to which Scarlet points appear only in the worksheet portion of Dr. Ratzburg's form, which is not an RFC assessment and therefore need not be separately considered. (See id.) The government notes that the form itself states that "'the actual mental [RFC] assessment is recorded in the narrative discussion(s) . . . in the explanatory text boxes" that follow the worksheet questions, (id. at 8 (citing A.R. 119-20, 133)), both Drs. Ratzburg and Tin "detailed [Scarlet's] specific capacities and limitations in narrative terms" as the form directs, (id. at 9), and ultimately the ALJ assessed

greater restrictions than those narratives, (id. at 9-10 (citing A.R. 120-22)). But the narratives do not nullify the worksheet responses.

Indeed, a state agency consultant's worksheet observations are "medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). As such, an ALJ may disregard worksheet observations only where the consultant's narrative "adequately encapsulates and translates" them. *Id.*; *see also DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (holding that ALJ "must adequately account for" worksheet checkboxes even where state agency consultant's narrative does not); *Kenneth P. v. Saul*, No. 18 CV 3346, 2019 WL 4958245, at *10 (N.D. Ill. Oct. 8, 2019) (finding ALJ erred by relying on consultant narratives that did not encapsulate all worksheet limitations consultant included); *Dominick M. v. Comm'r of Soc. Sec.*, No. 3:22 CV-00737-SPM, 2023 WL 6362795, at *8 (S.D. Ill. Sept. 29, 2023) (noting "[t]he narrative assessment does not function as a sieve to filter out the limitations from the checklist"). The court examines the worksheet limitations Scarlet highlights with this in mind.

First is Dr. Ratzburg's assessment that Scarlet is moderately limited in her ability to "maintain attention and concentration for extended periods." (A.R. 121.) The Seventh Circuit has "underscored" that "catch-all terms like 'simple, repetitive tasks'" alone do not suffice to account for CPP problems because they say, "nothing about whether the individual can [perform such tasks] on a sustained basis." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also Keck v. O'Malley*, No. 22-1716, 2024 WL 3935441, at *2 (7th Cir. Aug. 26, 2024) (holding that "an RFC does not account

for CPP limitations when it limits a claimant to certain kinds of work without addressing the claimant's ability to sustain that work"). Rather, the ALJ "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 Fed. Appx. 540, 544 (7th Cir. 2014). In this case, in addition to limiting the complexity of Scarlet's tasks, the ALJ restricted Scarlet to two-hour work intervals broken up by ten-minute breaks and a typical lunch period. (A.R. 47.) As noted, Dr. Ratzburg's narrative states that Scarlet "would likely have difficulty carrying out very detailed instructions and maintaining concentration for very extended periods." (Id. at 121-22.) This narrative "adequately encapsulates" Dr. Ratzburg's worksheet limitations, and the ALJ's RFC on this issue is consistent with the same. There was no error here.

The ALJ also accommodated Dr. Ratzburg's worksheet assessment that Scarlet is moderately limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." (Id. at 121.) To be sure, RFC provisions like those the ALJ supplied here for "simple, routine, repetitive" work performed in two-hour segments "naturally function as limitations on one's ability to complete a normal workday without interruption and to perform at a consistent pace." *Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025).

But neither Dr. Ratzburg's narrative nor the ALJ's RFC accounts for Dr. Ratzburg's worksheet assessment that Scarlet is moderately limited in her

"ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (A.R. 121.) And while Dr. Tin on reconsideration found that Scarlet was "not significantly limited" in this area, (id. at 134), as noted the ALJ made no distinction whatsoever between Drs. Ratzburg's and Tin's assessments, and she did not discuss the apparent inconsistency across Dr. Ratzburg's report, (id. at 50). Accordingly, the court is unable to trace the ALJ's path of reasoning from the evidence to her conclusion. *See Mischler v. Berryhill*, 766 Fed. Appx. 369, 376-77 (7th Cir. 2019) (holding ALJ erred in not accounting for all limitations assessed by state agency consultant whose opinion ALJ found persuasive, even though the consultant's "bottom-line opinion" also did not do so); *see also Michelle P. v. O'Malley*, No. 21 CV 1871, 2024 WL 1719449, at *2-3 (N.D. Ill. April 22, 2024) (remanding where ALJ found state agency consultants' opinions persuasive yet failed to explain why she declined to incorporate moderate check-box limitations they endorsed). The court cannot say the error was harmless given the VE's testimony that no work would be available to an individual who is off task more than 10% of a workday or has a combined total of eight or more absences, early departures, and late arrivals per year. (A.R. 102-03.) Thus, on remand and in addition to reassessing Drs. Stone's and Nudo's opinions, including regarding absenteeism, the ALJ must also reexamine the RFC with Dr. Ratzburg's opinions on the same in mind, providing a sufficient logical bridge between the evidence and her assessment. The court makes no prediction about the outcome following remand, but it is duty-bound to ensure the ALJ's decision is based on substantial evidence.

Scarlet also argues in generalized fashion that the ALJ did not provide the requisite logical bridge from the evidence of her mental impairments to the RFC, "which necessarily provided for the ability to adhere to a 40-hour-per-week, eight-hour-per-day schedule." (R. 14, Pl.'s Br. at 9.) The government does not respond to this broad argument. (See generally R. 19, Govt.'s Resp.) But this case is already being remanded for additional assessment and explanation, so the court trusts that the ALJ will connect the evidence to her conclusions at that juncture without further analysis here.

## Conclusion

For the foregoing reasons, this matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**